Y. David Scharf
Aaron B. Lauchheimer
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600
*Attorneys for Anderson Hill Road Capital LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDERSON HILL ROAD CAPITAL LLC,<br><br>                    Plaintiff,<br><br>        -against-<br><br>BMC – THE BENCHMARK MANAGEMENT<br>COMPANY,<br><br>                    Defendant. | Civil Action No. 1:20-cv-3378<br><br>**COMPLAINT AND<br><u>JURY DEMAND</u>** |

        Plaintiff Anderson Hill Road Capital LLC ("Lender" or "Anderson Hill") alleges

for its complaint against BMC – The Benchmark Management Company ("Defendant" or

"Benchmark"), based upon its personal knowledge, and upon information and belief as to all other

matters, as follows:

### NATURE OF THE ACTION

        1.        This action seeks indemnification and contribution from Benchmark in

connection with Benchmark's employment of workers at the former Doral Arrowwood Resort and

Hotel, located in Rye Brook, New York (the "Hotel").

        2.        In the context of a foreclosure action, a receiver was appointed to manage

the Hotel, and Benchmark, as the agent for the Hotel's owner, oversaw day-to-day operations at

the Hotel.  Ultimately, Benchmark terminated the Hotel's employees because the receiver ran out of money.

3.      Benchmark failed to provide timely notification to the Hotel's employees, thereby entitling the employees to WARN Act damages.  As the employer, Benchmark is liable for the WARN Act liability it incurred.

4.      By this action, Anderson Hill seeks indemnification and contribution from Benchmark on account of the WARN Act Liability.

## THE PARTIES

5.      Anderson Hill Road Capital LLC is a Delaware limited liability company, maintaining its principle place of business at 750 Lexington Avenue, New York, New York with its sole member residing in New York, New York.

6.      Anderson Hill is the holder of that certain Promissory Note made by DCCA, LLC ("DCCA" or "Borrower") in favor of Lender dated January 12, 2005, in the original principal amount of $75,000,000 (the "Note").  The Note is secured by, among other documents and instruments, a Fee and Leasehold Mortgage, Fee and Leasehold Mortgage Modification and Consolidation Agreement, Security Agreement and Fixture Filing, dated as of January 12, 2005, made by Borrower (the "Security Instruments"), also held by Lender, that encumbers the Hotel and improvements thereon more particularly identified in the Security Instruments.

7.      BMC – The Benchmark Management Company ("Defendant" or "Benchmark") is a corporation organized under the laws of the state of Texas, maintaining its principle place of business at 1780 Hughes Landing Blvd. #400, The Woodlands, Texas 77380.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332.  Complete diversity of jurisdiction exists because this action involves a dispute among citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Benchmark because it contractually consented to jurisdiction in New York pursuant to that certain management agreement, dated September 1, 2015 by and between Benchmark and DCCA (the "Management Agreement").

10.     This Court also has personal jurisdiction over Benchmark because it transacts business in this jurisdiction and the wrongful acts and/or omissions complained of herein occurred in this jurisdiction.

11.     Venue is properly based in this district pursuant to the Management Agreement, which states, "[t]he Parties agree that venue for all disputes shall be New York, New York."

12.     Venue is also proper pursuant to 28 U.S.C. § 1391 because at all relevant times, the wrongful acts and/or omissions complained of herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

**Benchmark and DCCA Enter Into the Management Agreement**

13.     DCCA is the owner of the Hotel and managed the Hotel through September 2015.

14.     Upon information and belief, DCCA was the employer of the Hotel employees at least until September 2015.

15.     Benchmark is a hotel, resort and conference center management company. Benchmark also owns two hotel portfolios, Benchmark Resorts & Hotels and Gemstone Collection,

16.     On or about September 1, 2015, DCCA and Benchmark entered into the Management Agreement whereby Benchmark would be the exclusive provider of management services for the Hotel.

17.     Pursuant to the Management Agreement, Benchmark had "full discretion in and control over", among other things, "the operation, direction, management and supervision of the Hotel (including, without limitation, labor policies) . . . [and] matters relating to employee compensation. . . ."

18.     Pursuant to Section 2.1 of the Management Agreement, DCCA was required to obtain the lender's consent prior to entering into the contract.

19.     In connection with Section 15.2 of the Management Agreement and Benchmark's potential termination, DCCA indemnified Benchmark for liability pertaining to any applicable state and federal Worker Adjustment and Retraining Act ("WARN Act").

20.     Ultimately, in late 2018, DCCA decided it wanted to self-manage the Hotel and sought to terminate Benchmark and the Management Agreement.

21.     After those discussions broke down, DCCA commenced litigation against Benchmark to terminate the Management Agreement.

22.     In that litigation, DCCA alleged, among other things, that under Benchmark's management, the Hotel had fallen into a state of disrepair and was losing money.

23.     In response to DCCA's allegations, Benchmark claimed that under its management, the Hotel's AAA rating and guest satisfaction scores had increased and that it was

4

DCCA that permitted the Hotel to fall into a state of disrepair by failing to make necessary capital improvements to the Hotel.

24.     Upon information and belief, Benchmark achieved those improved scores through, among other things, its oversight and management of the Hotel's employees.

25.     Ultimately, that litigation resulted in a settlement between DCCA and Benchmark which resulted in Benchmark continuing to manage the Hotel.

26.     At all relevant times hereto, the Management Agreement was a valid and enforceable agreement.

**Borrower Defaults On the Mortgage and a Temporary Receiver**
**Is Appointed to Manage the Hotel**

27.     In March 2019, the lender at that time commenced a foreclosure action against Borrower in New York Supreme Court, Westchester County based on certain defaults pertaining to, among other things, DCCA's litigation against Benchmark in connection with its attempt to terminate Benchmark and the Management Agreement without the lender's consent.

28.     At the same time, in order to preserve and protect its collateral, the lender sought the appointment of a temporary receiver to oversee the day-to-day operations of the Hotel.

29.     Before the receiver was appointed, DCCA, once again, tried to terminate the Management Agreement as part of the foreclosure action.

30.     As part of DCCA's attempt to terminate the Management Agreement, Benchmark represented to the court in the foreclosure action that it had not yet sent out WARN Act notices to the Hotel's employees.

31.     Ultimately, on or about March 26, 2019, the Lender and DCCA consented to the appointment of the receiver (the "Receiver").

32.     As part of that consensual resolution, among other things, DCCA agreed to indemnify Benchmark for any WARN Act liability.

33.     After the Receiver was appointed, in accordance with the court order appointing the Receiver, Benchmark continued to manage the day-to-day operations of the Hotel.

34.     Pursuant to the court order appointing the Receiver, Benchmark continued to serve as DCCA's agent in its role as day-to-day manager of the Hotel.

35.     When the Receiver was appointed, the Hotel was operating with a financial deficit.

36.     To try and address that financial deficit, the order appointing the Receiver stated that the Lender had the right, but not the obligation, to fund the Hotel's operations during the receivership.

37.     During the course of the receivership, the Receiver acknowledged that Benchmark provided its services pursuant to the Management Agreement.

**Anderson Hill Declines To Fund The Receiver's Operating Deficiency**
**And Benchmark Unilaterally Terminates The Hotel's Employees**

38.     During the course of the receivership, from time to time, the lender at the time of the commencement of the foreclosure action funded the Receiver's deficit in order to maintain operations at the Hotel.

39.     In or about December 2019, Anderson Hill acquired the Loan Documents.

40.     Shortly thereafter, the Receiver requested funding for a projected approximate $1 million operating deficit in connection with the operation of the Hotel.

41.     DCCA, as the owner, declined to fund the Receiver's approximately $1 million deficit.

42.     Anderson Hill, which was under no obligation to fund as was its right pursuant to the order appointing the Receiver and the Loan Documents, declined to fund the Receiver's approximately $1 million deficit.

43.     After DCCA and Anderson Hill declined to fund that projected shortfall, Benchmark unilaterally made the decision to terminate the Hotel's employees.

44.     Benchmark terminated the Hotel employees without the notice required by the WARN Act.

45.     In so doing, Benchmark, the employer of the Hotel's employees, caused the incurrence of WARN Act liability.

46.     The Receiver never disclosed that it needed the requested funds to pay the Hotel's employees.

47.     Ultimately, the court in the foreclosure action imposed WARN Act liability of approximately $3.7 million (the "WARN Act Liability").

**The Receivership Is Terminated And The WARN Act Liability**
**Is Improperly Imposed on Anderson Hill**

48.     Once the Receiver ran out of money, he sought to have the court terminate the receivership in January 2020.

49.     Before the Receiver could be discharged, though, the court needed to apportion financial responsibility for the Receiver's deficit, which included, among other things, the WARN Act liability incurred by Benchmark.

50.     Ultimately, the court imposed the WARN Act Liability, jointly and severally on Anderson Hill and the prior lender, even though neither of them was ever the employer of the Hotel's employees and or managed the Hotel in anyway.   Rather, pursuant to the Management Agreement, both of those tasks were the responsibility of Benchmark.

## CLAIM I – CONTRACTUAL INDEMNIFICATION

51.     Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

52.     The Management Agreement provides that Benchmark, as the employer of the Hotel's employees, was liable for any WARN Act related liability.

53.     On or about December 24, 2019, Benchmark terminated all of the Hotel's employees without the required notice in accordance with the WARN Act.

54.     On or about March 26, 2020, the court in the Foreclosure Action imposed the WARN Act Liability on Arrowwood even though the court did not find that Anderson Hill was the employer of the Hotel employees.

55.     Pursuant to the Management Agreement, as the employer, Benchmark was responsible for the WARN Act Liability.

56.     Plaintiff seeks indemnification from Benchmark on account of the WARN Act Liability.

## COUNT II – BREACH OF CONTRACT/THIRD-PARTY BENEFICIARY

57.     Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

58.     The Management Agreement constitutes a binding contract for the benefit of the parties named therein, including third-party beneficiary Anderson Hill.

59.     As set forth above, Benchmark was the employer of the Hotel's employees.

60.     As set forth above, Benchmark breached the Management Agreement by failing to pay the WARN Act Liability, which was imposed on Anderson Hill, after Benchmark terminated the Hotel's employees.

8

61.     Based upon the foregoing, and as a direct and proximate cause thereof, Anderson Hill has suffered damage as a result thereof, including the WARN Act Liability.

## CLAIM III – COMMON LAW INDEMNIFICATION

62.     Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

63.     The Management Agreement provides that Benchmark, as the employer of the Hotel's employees, was liable for any WARN Act related liability.

64.     On or about December 24, 2019, Benchmark terminated all of the Hotel's employees without the required notice in accordance with the WARN Act.

65.     On or about March 26, 2020, the court in the Foreclosure Action imposed the WARN Act Liability on Arrowwood even though the court did not find that Anderson Hill was the employer of the Hotel employees.

66.     It is unfair and unjust for Anderson Hill to be responsible for any of the WARN Act Liability when it never employed the Hotel employees, never paid them any of their salary, and never was responsible for the supervision of the Hotel employees.

67.     As the party that employed the Hotel employees, Benchmark has a duty to the Hotel employees for any and all obligations owed to them, including the WARN Act Liability.

68.     Plaintiff seeks indemnification from Benchmark on account of the WARN Act Liability.

## CLAIM IV – CONTRIBUTION

69.     Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

70.     Benchmark acted in concert as a joint tortfeasor.

71.     Without Benchmark's tortious conduct, the Receiver would not have been able to incur the WARN Act Liability.  The actions taken by Benchmark facilitated the harm committed and augmented the injury suffered by Anderson Hill.

72.     By contributing to the Receiver's misconduct, Benchmark proximately caused the damages suffered by the Hotel's employees.

73.     Anderson Hill brings this claim against Benchmark to the extent it contributed to the damages suffered by the Receiver and which have been improperly assessed against Anderson Hill.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(i)     Determining and awarding contractual indemnification to Plaintiff on account of the WARN Act Liability;

(ii)    Determining and awarding damages to Plaintiff on account of the WARN Act Liability;

(iii)   Determining and awarding indemnification to Plaintiff on account of the WARN Act Liability;

(iv)    Determining and awarding contribution to Plaintiff on account of the WARN Act Liability; and

(v)     Granting such other relief, including equitable and injunctive relief, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury

in this action on all issues so triable.

Dated: New York, New York
        April 30, 2020

                          MORRISON COHEN LLP

                          By:___/s/ *Y. David Scharf*_____
                               Y. David Scharf
                               Aaron B. Lauchheimer
                               909 Third Avenue
                               New York, New York 10022
                               (212) 735-8600
                               *Attorneys for Plaintiff Anderson Hill*
                               *Road Capital LLC*